UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JENNIFER HICKS,<br><br>  Plaintiff,<br><br>  v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>  Defendant. | CAUSE NO.: 4:24-CV-63-TLS |

**OPINION AND ORDER**

The Plaintiff, Jennifer Hicks, seeks review of the final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits and supplemental security income. The Plaintiff argues that the Administrative Law Judge (ALJ) made several errors related to her mental residual functional capacity. For the reasons set forth below, the Court finds that reversal and remand for further proceedings is required.

**PROCEDURAL BACKGROUND**

On August 20, 2021, and August 23, 2021, the Plaintiff filed applications for disability insurance benefits and supplemental security income, respectively, alleging disability beginning on January 1, 2020. AR 10, 304–06, 311–12, ECF No. 6. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on August 21, 2023 (vocational expert testimony) and on February 8, 2024 (the Plaintiff's testimony and vocational expert testimony). AR 10, 51–63, 64–86. On July 31, 2015, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 10–29. The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1–3. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*,

923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On September 17, 2024, the Plaintiff filed her Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision and remand for further administrative proceedings. The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 9, 15, 16.

## THE ALJ'S DECISION

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[1] To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since January 1, 2020, the alleged onset date. AR 12.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of degenerative disc disease, lumbar spine; status post-arthroscopy, left wrist,

---

[1] The Court cites the disability insurance benefits statutes and regulations, which are largely identical to those applicable to supplemental security income. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

secondary to degenerative joint disease; chronic obstructive pulmonary disease; status post-pneumothorax, right lung; mood disorder; anxiety disorder; complicated grief; and substance use (synthetic cannabis). AR 13.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings [in appendix 1 to subpart P of part 404 of this chapter]." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that he considered Listings 1.15, 1.18, 3.02, 12.04, 12.06, and 12.08. AR 13.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with additional non-exertional limitations. The claimant can, with normal breaks:
> - Occasionally lift up to 20 pounds;
> - Frequently lift and/or carry up to 10 pounds;
> - Walk and/or stand up to 6 hours per 8-hour workday;
> - Sit for at least 6 hours per 8-hour workday; and
> - Push and/or pull to include operation of hand/or foot controls with the bilateral upper and lower extremities as restricted by the limitations on lifting and/or carrying subject to:
>
> Postural limitations of:
> - Never climbing ladders, ropes, or scaffolds;
> - Occasionally climbing ramps or stairs; and

3

- Occasionally balancing, stooping, crouching, kneeling, or crawling;

Manipulative limitations of:
- Frequently reaching, handling objects (gross manipulation) and fingering objects (fine manipulation);

And

Environmental limitations of:
- Avoid all exposure to unprotected heights;
- Avoid concentrated exposure to dangerous moving machinery;
- Avoid concentrated exposure to extreme heat;
- Avoid concentrated exposure to extreme wetness or humidity; and
- Avoid concentrated exposure to respiratory irritants such as fumes, odors, dusts, and gases.

Additionally, the claimant is limited to work that requires performing simple and routine tasks. The claimant cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. The claimant is limited to only occasional interaction with the public in the work setting.

AR 22.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff is capable of performing her past relevant work as a sorter. AR 27 (citing 20 C.F.R. § 404.1565).

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national economy given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ also found that the Plaintiff is capable of performing other jobs in the national economy of office helper, marker, and mail clerk. AR 29. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard

and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (cleaned up). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual

5

findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

Seeking reversal and remand, the Plaintiff argues that the ALJ made several errors in assessing the Plaintiff's mental RFC. The Commissioner responds that the ALJ's decision is supported by substantial evidence. The RFC is a measure of what an individual can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes the claimant's medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

Before addressing the Plaintiff's arguments, the Court summarizes the ALJ's discussion of the evidence related to the Plaintiff's mental impairments. At step two, the ALJ found that the Plaintiff has the severe mental impairments of mood disorder, anxiety disorder, and complicated grief. At step three, the ALJ considered the following evidence from the Plaintiff's mental health treatment history to determine that she did not meet or medically equal the criteria for certain

listings. AR 19–20. The Plaintiff had a history of mental health treatment prior to the alleged onset date, with the Plaintiff reporting that in September 2020, she had a history of problems due to depression and anxiety after the death of her daughter in 2019. *Id.* 19. The care provider observed signs of depression and anxiety but noted that the Plaintiff was alert, oriented to person, place, and time, and exhibited normal behavior. *Id.* In April 2021, the Plaintiff attended therapy with her counselor, who observed that the Plaintiff was properly dressed with good hygiene, was alert and oriented to person, place, time, and situation, had fluent speech that was not pressured, and presented logical thought process. *Id.* The counselor noted that the Plaintiff reported improved sleep but little to no motivation to exercise or improve her diet. *Id.* Observing that the Plaintiff demonstrated a slight decline in motivation and energy level, the counselor noted that the Plaintiff was managing her moods with minimal changes in daily functioning. *Id.*

Next, the ALJ discussed the August 2022 psychological consultative evaluation with Dr. Caryn Brown, Psy.D, where the Plaintiff reported that most of the time her mood was depressed but occasionally she was in a good mood. *Id.*; *see id.* 27. The ALJ noted the following findings of Dr. Brown. *Id.* 19. Dr. Brown observed that the Plaintiff was casually dressed, her overall personal hygiene appeared okay, and she was alert, cooperative, and oriented to person, place, and time. *Id.* The psychologist opined that the Plaintiff's mood appeared nervous and that, in general, her affect was appropriate for the situation. The Plaintiff had some trouble with short term memory, but recent memory function appeared intact. *Id.* 20. The psychologist opined that the Plaintiff demonstrated no impairment in her ability to sustain concentration and attention. *Id.* She presented intact simple attention. *Id.* Regarding her concentration, the Plaintiff stated, "apparently it's pretty good" because she could read a book without being distracted. *Id.* The ALJ also noted that in her previously prepared Function Report, the Plaintiff wrote that she did

7

not have the energy to read. *Id.* The psychologist assessed the Plaintiff with major depressive disorder and unspecified anxiety disorder. *Id.*

In finding that the Plaintiff did not meet or medically equal a listing at step three, the ALJ made the following findings in the four broad areas of mental functioning. *Id.* For understanding, remembering, or applying information, the ALJ found the Plaintiff had a mild limitation, discussing her ability to perform chores such as "washing dishes, laundry, and preparing" while her boyfriend was at work and that she could meet alone with care providers and manage and make decisions regarding her treatment. *Id.* 21. For adapting or managing oneself, the ALJ also found the Plaintiff has a mild limitation. The ALJ noted that the Plaintiff's response to becoming irritated had become less extreme. *Id.*

For interacting with others, the ALJ found she had a moderate limitation, based on anxiety caused by meeting new people. *Id.* 20. The ALJ cited the Plaintiff's statement that she felt she got along with people "pretty well" and that in her Function Report she denied having a problem with family, friends, or other people. *Id.* But the ALJ also noted her statements during consultative evaluation that she has no family to associate with. *Id.* The ALJ again noted the Plaintiff's ability to attend in-person appointments on her own. *Id.* 20–21.

As for concentration, persistence, and pace, the ALJ also found the Plaintiff had a moderate limitation, acknowledging the Plaintiff's reports that she is not motivated to do things and sometimes procrastinates. *Id.* 21. Yet, the ALJ also noted the Plaintiff's testimony that she does laundry, washes dishes, and cooks and that the Plaintiff did not testify that she failed to complete these tasks. *Id.* The ALJ cited the Plaintiff's reports that she feels nervous or anxious daily, even when alone, that she told the evaluating psychologist that she was often worried but there were times she was able to put the worries out of her mind, and that she reported having

road rage. *Id.* But the ALJ found no evidence that she was unable to main the concentration, persistence, or pace necessary to drive the 10 miles from home to her boyfriend's work with any difficulty. *Id.*

The ALJ noted that these Paragraph B criteria for purposes of the Listings is not an RFC assessment, which requires a more detailed assessment. *Id.* 22. But the ALJ also relied on the Paragraph B criteria in formulating the RFC: "The following residual functional capacity assessment reflects the degree of limitation I have found in the paragraph-B mental functional analysis." *Id.* The ALJ provided the following mental RFC: "[T]he claimant is limited to work that requires performing simple and routine tasks. The claimant cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. The claimant is limited to only occasional interaction with the public in the work setting." *Id.*

In the subsequent narrative RFC discussion, the ALJ noted that the Plaintiff was not taking medication for depression or anxiety because she had not yet had a chance to meet with a psychiatric care provider despite being on a waiting list for more than one year. *Id.* 23. The ALJ noted the Plaintiff's testimony that she drives her boyfriend to his job and back home every day, and that she testified that during the day she plays with her cat, watches television, washes dishes when physically able, does laundry, and occasionally picks up around the house. *Id.* 24. The ALJ found this suggests the Plaintiff had some improvement in her motivation since the date of the mental health evaluation. *Id.* The ALJ discussed the earlier finding of a moderate limitation in concentration, persistence, or pace, noting this finding assumes she might be momentarily distracted and not fully aware of her surroundings, which resulted in the accommodations of restricting her to work that requires performing simple and routine tasks and precluding her from jobs requiring a specific rate of production, an assembly line, or hourly quotas. *Id.* 25. To

accommodate her anxiety from meeting new people, the ALJ limited her to work requiring only occasional interaction with the public. *Id.*

The ALJ then discussed the medical opinions. *Id.* 25–27. Relevant here, Dr. Bangura, M.D. provided an internal medicine consultative examination, which the ALJ discussed only as to Dr. Bangura's physical examination and findings. *Id.* 27. As for consultative examiner Dr. Brown, whose report the ALJ earlier discussed at step three, the ALJ noted that Dr. Brown prepared a report documenting her evaluation findings. *Id.* The ALJ noted that the report contained a "Summary" section in which Dr. Brown opined on the Plaintiff's "ability to function in the workplace based on observation and performance during the evaluation." *Id.* The ALJ stated generally that he found this report only somewhat persuasive because it was unclear how Dr. Brown arrived at her opinions since she did not include a function-by-function analysis explaining how the deficits documented during the evaluation would specifically interfere with the Plaintiff's ability to perform work. *Id.* And the ALJ stated generally that he nevertheless considered the report when providing the mental RFC. *Id.*

Turning to this appeal, the Plaintiff first argues that the ALJ failed to consider two of Dr. Bangura's opinions regarding the Plaintiff's mental health when formulating the mental RFC. An ALJ has an obligation to evaluate every medical opinion and explain the persuasiveness of the opinion. *See* 20 C.F.R. § 404.1520c(a), (b). Medical opinions are evaluated using the following factors: (1) supportability, which means how well the objective medical evidence and supporting explanations presented by a medical source support the opinion; (2) consistency, which means how consistent the medical opinion is with the evidence from other medical sources and nonmedical sources; (3) relationship with the claimant, which considers the length of a treatment relationship, the frequency of examinations, the purpose of a treatment relationship, the extent of

a treatment relationship, and whether there is an examining relationship; (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the medical opinion. *Id.* § 404.1520c(c)(1)–(5). The most important factors for evaluating the persuasiveness of a medical opinion are supportability and consistency. *Id.* § 404.1520c(a), (b)(2). Therefore, the ALJ must explain how the ALJ considered those two factors in making the disability decision. *Id.* § 404.1520c(b)(2). However, the ALJ may, but need not, explain how the ALJ considered the remaining three factors. *Id.* Importantly, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 362207, at *7 (July 2, 1996).

In her July 2022 report on physical examination, Dr. Bangura gave a Medical Source Statement providing opinions on activities of daily living as well as the following "difficulties": "[The Plaintiff] shows difficulty with sustained concentration. [The Plaintiff] shows difficulty with persistence. [The Plaintiff] shows difficulty with memory. [The Plaintiff] shows difficulty working with others. [The Plaintiff] shows difficulty in social interactions." AR 938. Even though the ALJ discussed Dr. Bangura's Medical Source Statement in formulating the Plaintiff's physical RFC, the ALJ did not address Dr. Bangura's opinions regarding these "difficulties" in the mental RFC assessment.

The Plaintiff argues specifically that, by failing to discuss the Plaintiff's difficulty in "working with others" or "in social interactions," the ALJ failed to "build a logical bridge from the evidence to her conclusion." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (citing *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024)). First, as to any difficulty "in social interactions," the RFC assessment is not in conflict with Dr. Bangura's

opinion because the RFC limits the Plaintiff to only occasional interaction with the public in the work setting to accommodate her increased anxiety with new people as supported by the record. *Id*. The Plaintiff does not explain why this accommodation is insufficient to address her social anxiety nor does she identify any evidence of record demonstrating the need for a greater limitation.

However, the RFC conflicts with Dr. Bangura's opinion regarding the Plaintiff's "difficulty working with others," as the RFC contains no limitations regarding interaction with coworkers or supervisors. And, as argued by the Plaintiff, the ALJ failed to provide any explanation for why the opinion was not adopted. Dr. Bangura's report notes the Plaintiff's report that "she doesn't go out because she gets anxious" and that she sees a case worker once a month and a psychiatrist every three months. Notably, a month after Dr. Bangura gave her Medical Source Statement, Dr. Brown, who performed a psychological consultative examination, also opined that the Plaintiff's "ability to interact with others in public *or* in a work setting appears to be fair." AR 945 (emphasis added). The Defendant argues that the ALJ's RFC was consistent with Dr. Brown's opinion because the ALJ included a limitation to only occasional interaction with the public. But this reasoning suggests that the ALJ should have also included some limitation on working with others given that Dr. Brown likewise found the Plaintiff's ability to work with others to be "fair."

Contrary to the Defendant's assertion that Dr. Bangura's opinion directly contradicts Dr. Brown's opinion, the opinions of Dr. Brown and Dr. Bangura appear consistent on the issue of the Plaintiff having difficulty in her ability to work with others. Dr. Brown's opinion that the Plaintiff's ability to "interact with others . . . in a work setting appears to be fair," AR 945, is consistent with Dr. Bangura's opinion that the Plaintiff "shows difficulty working with others,"

AR 938, just as Dr. Brown's opinion that the Plaintiff's ability to "interact with others in public . . . appears to be fair," AR 945, is consistent with Dr. Bangura's opinion that the Plaintiff has "difficulty in social interactions," AR 938. Yet the ALJ only accommodated the Plaintiff's difficulty interacting with others in public but did not accommodate her difficulty working with others. Not only did the ALJ not discuss Dr. Bangura's opinion on the Plaintiff's mental functioning or explain why she did not adopt Dr. Bangura's opinion that the Plaintiff "shows difficulty working with others," the ALJ also provided no explanation for not accommodating only a "fair" ability to interact with others in a work setting opined by Dr. Brown when the ALJ accommodated Dr. Brown's opinion that the Plaintiff had a "fair" ability to interact with the public.

In response to the ALJ's failure to discuss Dr. Bangura's opinion on the Plaintiff's mental limitations, the Defendant offers several reasons, based on the evidence, why Dr. Bangura's opinions are not persuasive. This includes the Defendant's assertion discussed above that Dr. Bangura's opinion is allegedly not consistent with Dr. Brown's opinion. But the ALJ did not discuss any of these reasons, and, as argued by the Plaintiff in her reply brief, the Defendant cannot supplement the ALJ's reasoning or provide post-hoc rationales. *See Smith v. Astrue*, 467 F. App'x 507, 510–11 (7th Cir. 2012) (rejecting the Commissioner's "post hoc rationalization" of the ALJ's RFC analysis because "'what matters are the reasons articulated *by the ALJ*,' not the rationale advanced by the government on appeal" (quoting *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011); citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943))); *Poole v. Kijakazi*, 28 F.4th 792, 796 (7th Cir. 2022) ("[W]e can only speculate about what persuaded the ALJ to rule against Poole. The ALJ's decision therefore falls short of *Chenery*'s command to articulate the grounds clearly and rationally for her decision.").

Remand is required for the ALJ to consider Dr. Bangura's Medical Source Statement on the Plaintiff's difficulty with working with others, which is consistent with Dr. Brown's opinion that the Plaintiff's ability to interact with others in a work setting is fair. If the RFC remains unchanged, the ALJ must explain why he did not include a limitation on interacting with others in the work setting. Because remand is required on this issue, the Court does not reach the Plaintiff's other arguments regarding an updated opinion for a mental function-by-function analysis and the Plaintiff's subjective complaints, which can be addressed on remand.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 9] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on September 9, 2025.

> s/ Theresa L. Springmann
> JUDGE THERESA L. SPRINGMANN
> UNITED STATES DISTRICT COURT